IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| D.W., a Minor, by and through )<br>MICHELLE WILLIAMS, his Parent, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CHESTERFIELD COUNTY SCHOOLS )<br>and DR. JAMES LANE, )<br>SUPERINTENDENT, CHESTERFIELD )<br>COUNTY PUBLIC SCHOOLS, )<br>    Defendants. )<br>) | Civil Action No. 3:17cv679 (MHL) |

**REPORT & RECOMMENDATION**
**On Defendants' Motion to Dismiss the Complaint**

This case presents an unusual procedural posture where a defendant removes a case filed in state court, invoking federal subject matter jurisdiction, and then challenges that jurisdiction in a motion to dismiss. D.W. ("Plaintiff"), a Minor, by and through his parent Michelle Williams ("Williams"), brings this action *pro se* against Chesterfield County Schools (the "School") and Dr. James Lane, Superintendent, Chesterfield County Public Schools (collectively, "Defendants") alleging that "Defendants have breached duties and responsibilities to D.W. under IDEA and denied him a Free Appropriate Public Education (FAPE) and punished him for his disability by expelling him based upon behavior that was a manifestation of his disability." (Compl. ¶ 3, ECF No. 1-2.) The Court liberally construes Plaintiff to request an appeal from an administrative decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A) for denial of a FAPE to Plaintiff. This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") (ECF No. 5) under Federal Rules of

1

Civil Procedure 12(b)(1) and 12(b)(6). (Order, ECF No. 9.) Having considered Plaintiff's Complaint, the Defendants' brief, and for the reasons discussed below, the Court RECOMMENDS remanding the action to Chesterfield County Circuit Court. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (citing *Ex Parte McCardle*, 7 Wall. 506, 514 (U.S. 1868)).

## I.     BACKGROUND

### A. The Individuals With Disabilities Education Act

To provide a conceptual framework for understanding the Complaint, the Court reviews the IDEA's statutory framework and the procedural mechanisms used to effectuate its purpose. Congress passed the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States that receive federal education funds are required to provide disabled schoolchildren with a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982). A local educational agency ("LEA") meets the IDEA's FAPE requirement by developing and reviewing an Individual Education Plan ("IEP") for each child with a disability. 20 U.S.C. § 1412(a)(4). "IEPs are written statements for each disabled child designed by a team of school district educators and administrators, education experts [(collectively, the "IEP team")], and the child's parents." *S.H. v. Fairfax Bd. of Educ.*, 875 F. Supp. 2d 633, 640 (E.D. Va. 2012) (citing 20 U.S.C. § 1414(d)(1)(A)-(B); 34 C.F.R. §

300.321(a)). An IEP will include, *inter alia*, the placement of a disabled child within a particular educational setting.

When a disabled child violates a code of student conduct at their current placement, school personnel may remove the child to an appropriate interim educational setting, another setting, or suspension, for not more than ten school days. 20 U.S.C. § 1415(k)(1). Within ten school days of the school's decision to remove, a panel comprising the LEA, the child's parents, and relevant members of the IEP team (as determined by the LEA and the parents) will conduct a Manifestation Determination Review ("MDR") to determine if the disabled child's misconduct was a manifestation of his or her disability. *Id.* § 1415(k)(1)(E).

If the MDR panel determines that the behavior was not a manifestation of the child's disability, and school personnel seek an order to change the child's placement for more than ten school days (i.e., long-term suspension), then school personnel may apply to the disabled child the same relevant disciplinary procedures that would be applicable to children without disabilities. *Id.* § 1415(k)(1)(C). Or, the IEP team, with the parent's consent, may change the disabled child's placement to an alternate educational setting. *Id.* § 1415(j).

The parent may appeal the MDR determination or any decision regarding the disabled child's placement following the child's removal and will receive a due process hearing before a Hearing Officer. *Id.* § 1415(k)(3)(A). If after conducting the due process hearing, the Hearing Officer rules for the parent, the Officer may order a change of placement returning the disabled child to the placement from which the child was removed. *Id.* § 1415(k)(3)(B)(ii). The parent may further appeal adverse findings and the decision from the Hearing Officer to a federal district court. *Id.* § 1415(i)(2)(A). With this framework in mind, the Court proceeds to the relevant facts.

### B.  Relevant Factual Background

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure instruct that the Court accept as true the plaintiff's well-pleaded allegations, viewing all facts and drawing all reasonable inferences in the light most favorable to him. *T. G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Where, as here, the moving party to a motion to dismiss attacks the complaint for lack of subject matter jurisdiction, the Court will "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one of summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal citations and quotations omitted). Defendants attach two documents as evidence that the Court lacks subject matter jurisdiction in this action: (1) the affidavit of Amy Vineyard, Coordinator of Administrative Services at the Department of Special Education for Chesterfield County Public Schools (the "Vineyard Affidavit") (Def.'s Mem. in Supp. Mot. Dismiss, Ex. A, EFC No. 3-1); and (2) the decision from Plaintiff's administrative hearing pursuant to the IDEA (the "Decision") (Def.'s Mem. in Supp. Mot. Dismiss, Ex. B, ECF No. 3-2). The Court shall consider these documents only in its jurisdictional analysis. Applying the aforementioned standards, the facts are construed as follows for the purpose of resolving the Motion to Dismiss.

Plaintiff is a school-age child, in the ninth grade during the relevant time period, having one or more disabilities as classified by the IDEA for the 2016-2017 academic school year.[1] (Compl. ¶ 1; Vineyard Aff. ¶ 4.) To accommodate his learning needs under the IDEA, Plaintiff was assigned to an IEP starting in May 10, 2016. (Vineyard Aff. Ex. 1, at 1.)  During the relevant

---

[1] Plaintiff is diagnosed with an Emotional Disability ("ED") and Other Health Impairment ("OH") for anxiety, aggression, and depression; and Attention Deficient Hyperactive Disorder ("ADHD").  (Vineyard Aff. Ex. 1, at 3.)

time period, Plaintiff's IEP provided services and accommodations to address his behavior and social development. (Decision, at 7–8.)

On December 9, 2016, Plaintiff entered his school wearing a hooded sweatshirt with the hood covering his head. (*Id.* at 2.) For security reasons and to identify students, school policy prohibits students from covering their heads. (*Id.*) Plaintiff received warnings from multiple school faculty members to remove the hood and eventually his math teacher escorted him to the assistant principal's office. (*Id.*; Compl. ¶ 9(b).) There, the assistant principal stressed the importance of the no-hood rule, that Plaintiff was not in trouble, and that there would be no consequences for Plaintiff's noncompliance. (Decision, at 3.) Plaintiff indicated that he understood. (*Id.*)

Before returning Plaintiff to class, the assistant principal called his mother, Williams, and informed her of the hood incident and that no further disciplinary action would be taken. (*Id.*, Compl ¶ 9(c).) Williams asked to speak with Plaintiff. (Compl. ¶ 9(c).) After several minutes speaking with his mother, Plaintiff became agitated and started screaming and cursing about his mother sending him back to his father. (*Id.*; Decision, at 3.) Plaintiff then slammed the telephone down, knocked everything off of the assistant principal's desk, and bolted from the office while vandalizing several pieces of office furniture in his wake. (Decision, at 3.) Faculty and staff followed Plaintiff as he ran through the school. (*Id.*) Staff members found Plaintiff outside and asked him what happened as he calmed down. (*Id.*) Plaintiff indicated that his mother's comments "set him off." (*Id.* at 3–4.) The assistant principal escorted Plaintiff inside and, after a telephone conversation with his mother, brought Plaintiff home. (*Id.* at 4.)

The assistant principal determined that Plaintiff ought to bear consequences for his conduct. On December 13, 2016, the assistant principal held a meeting with Williams and

Plaintiff and informed them that Plaintiff would be suspended for ten days, with a recommendation for long-term suspension based on his conduct. (*Id.* at 4.) The assistant principal also informed Williams, *inter alia*, of her right to appeal the suspension and recommendation for long term suspension. (*Id.*) That day, Williams noted her appeal by letter with the Office of Student Conduct. (*Id.*)

After the suspension, the School notified Williams of its intention to conduct a Manifestation Determination Review ("MDR") on December 16, 2016 to determine whether Plaintiff's conduct warranting the suspension was a manifestation of his disability. (*Id.* at 5.) The notice also included the invitees to the meeting and informed Williams that she may invite persons with expertise or knowledge about Plaintiff.[2] (*Id.*) The School apprised Williams of the meeting multiple times by phone, e-mail, and in-person. (*Id.*) Ultimately, Williams did not attend the MDR meeting, nor did she contact the School to reschedule. (*Id.*) The MDR meeting occurred on December 16, 2016, and the panel determined that Plaintiff's conduct was not a manifestation of his disability.[3] (*Id.*)

The day that the MDR panel rendered its decision, the School made services available to Plaintiff. He could access his classwork on Google classrooms, and additional accommodations were made available. (*Id.* at 24.) The School also contacted Williams on multiple occasions attempting to schedule an IEP meeting with her. (*Id.*) Williams failed to respond with her availability. (*Id.*) The School scheduled an IEP meeting for January 17, 2017 and provided her with advance notice of the meeting. (*Id.*)

---

[2] The School invited the Plaintiff, Williams, the assistant principal, the coordinator of Special Education, the General Education Teacher, the School Counselor, Special Education Liaisons, and a Special Education Teacher. (Decision, at 5.) Williams did not invite anyone. (*Id.*)

[3] The Complaint provides considerable detail on the evidence that the MDR panel did or did not consider in making this determination of whether Plaintiff's December 9, 2016 conduct was a manifestation of his disability. These details, while of potential import to the requested *de novo* review of the Hearing Officer's administration decision, have no bearing on the Court's analysis at the motion to dismiss stage for the Rule 12(b)(1) jurisdictional challenge.

On January 17, 2017, Williams was notified that Plaintiff would be suspended for the remainder of the 2016-2017 academic school year. (Vineyard Aff. ¶ 8.)  Plaintiff's IEP team held their scheduled meeting the same day; Williams elected not to attend. (Decision, at 11, 24.) At the meeting, the IEP team proposed changing Plaintiff's IEP to include home-based services during the suspension period. (*Id.*)  Williams refused to consent to the proposal. The School did not provide the services based on Williams' denial. (*Id.*)

The IEP team held another meeting on February 14, 2017 and proposed providing Plaintiff with special education services in a private day school. (*Id.* at 12, 24.)  Williams attended the meeting but did not consent to the proposal.[4] (*Id.*)

On March 8, 2017, the IEP team convened a third time and proposed the private day school plan again. (*Id.*)  Williams attended the meeting and consented to the third proposal. (*Id.*)  Plaintiff has yet to begin the program because, according to evidence presented at the hearing, Williams failed to provide information requested by the private day school to enroll Plaintiff. (*Id.*)  On April 17, 2017, the private day school sent a letter to Plaintiff indicating that Plaintiff's admission status was in limbo because the school required additional paperwork from Williams and the school needed to interview Plaintiff. (*Id.* at 25–26.)

### C.  Relevant Procedural History

On March 30, 2017, Plaintiff, through Williams, requested an expedited due process hearing to challenge the MDR determination. (*Id.* at 1.)  A Hearing Officer held a two-day hearing on the matter ending on May 4, 2017 and determined on May 18, 2017 that Defendants did not deny a FAPE to Plaintiff. (*Id.* at 1, 25.)  On August 17, 2017, Plaintiff timely appealed the administrative decision and filed his *pro se* complaint in Chesterfield County Circuit Court.

---

[4] Williams did request a functional behavior assessment ("FBA"), but the Hearing Officer concluded that the School was not required to conduct one because information from Plaintiff's prior FBAs and Behavior Intervention Plans were incorporated into the proposed IEPs. (Decision, at 24.)

Defendants removed the case to this Court on October 6, 2017 pursuant to 28 U.S.C. § 1441. (Notice of Removal, ¶ 4, ECF No. 1.) Defendants stated, as the grounds for removal, that "the Court has subject matter jurisdiction because Plaintiff's Complaint is a civil action by a party aggrieved by the decision of an administrative hearing officer rendered pursuant to the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*" (*Id.* ¶ 11.) Defendants claimed removal was proper because the claim arose under a federal statute and, thus, satisfied the requirements of federal question jurisdiction. (*Id.*, ¶¶ 12, 13.)

One week later, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure12(b)(1) challenging the Court's subject matter jurisdiction for Plaintiff's lack of standing[5] and, in the alternative, under Rule 12(b)(6) for failure to state a claim. (ECF No. 5.) Plaintiff failed to respond to the Motion to Dismiss. On May 9, 2018, Judge Lauck issued an Order referring the Motion to Dismiss to the undersigned for Report and Recommendation. (ECF No. 9.) The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). The Motion has been fully briefed and is ripe for review.

## II.    STANDARD OF REVIEW

Defendants advance two separate grounds in the Motion to Dismiss as the basis for

---

[5] Defendants appear to conflate the mootness and standing doctrines in their brief in support of the Motion to Dismiss. Specifically, Defendants argue that this matter is "moot" because Williams consented to the third proposed IEP for Plaintiff before appealing the MDR determination before its Hearing Officer. Whether a plaintiff has standing is tested at the time the case is filed. *See Qimonda AG v. LSI Corp.*, 857 F. Supp. 2d 570, 574 (E.D. Va. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992) ("[S]tanding is to be determined at the commencement of suit.")). The doctrine of mootness, with long-recognized exceptions not applicable here, "can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)). The Court observes that Williams' consent to the IEP – the basis of Defendants' Rule 12(b)(1) challenge – occurred prior to Plaintiff filing this civil action. Defendants dispute Plaintiff's standing to sue at the inception of the lawsuit. Properly framed, this is an issue of standing, not mootness.

requesting that the Court dismiss the Complaint with prejudice. Defendants first make a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, arguing that Plaintiff lacks standing to bring his IDEA claim because Williams consented to the IEP team's third proposal in March 8, 2017 providing Plaintiff with an amended IEP while under long-term suspension. In the alternative, Defendants raise a Rule 12(b)(6) challenge, contending that the Complaint lacks a legally cognizable claim because Plaintiff brought this action against improper parties. Courts must first resolve jurisdictional objections before proceeding to the merits question. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998). Accordingly, the Court addresses Defendants' Rule 12(b)(1) challenge first.

In a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the party asserting jurisdiction bears the burden of proving that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Intern. Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in one of two ways: facially or factually. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017); *Adams*, 697 F.2d at 1219. In a facial challenge, the defendant contends that the complaint "fails to allege facts upon which subject matter jurisdiction can be based" and the plaintiff "is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration." *See Adams*, 697 F.2d at 1219. Defendants do not assert a facial challenge to the Complaint in the Motion to Dismiss.

In a factual challenge, as is present here, the defendant contends "that the jurisdictional allegations of the complaint [are] not true." *Id.*; *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh the evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *See id.*; *see also Adams*, 697 F.2d at 1219. Indeed, the Court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768).[6] The Court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## III.    DISCUSSION

The procedural posture of the case is unusual in that Defendants removed the action to federal court under 28 U.S.C. § 1441 because Plaintiff's IDEA claim arises under federal law, and they now seek to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for want of Article III standing. Defendants' standing arguments suggest that they improperly removed the action and that the Court lacks subject matter jurisdiction. Accordingly, the Court evaluates the propriety of Defendants' removal of this action on its own initiative and as a precondition to considering the Motion to Dismiss.

---

[6] Unlike this case, if the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits, unless the claim is made solely for the purpose of obtaining jurisdiction or is determined to be wholly insubstantial and frivolous. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219.

Removal is proper only when a case originally could have been filed in federal court.  28 U.S.C. § 1441(a); *e.g., Venezuela v. Massimo Zanetti Beverage USA, Inc.*, 525 F. Supp. 2d 781, 784 (E.D. Va. 2007).  "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).  Raising significant federalism concerns, removal jurisdiction must be strictly construed.  *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).  A remand is necessary where federal jurisdiction is in doubt.  *Id.*; 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added).).

Section 1441(a) allows removal of cases over which federal courts have "original jurisdiction," and 28 U.S.C. § 1331 grants district courts "original jurisdiction" over claims "arising under" a federal statute.  Yet, establishing federal subject matter jurisdiction requires more than showing the existence of a federal question.  Article III standing requirements are jurisdictional and must also be satisfied.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (finding that, where the plaintiff lacks standing, the court lacks subject matter jurisdiction); *Steel Co.*, 523 U.S. at 100–01; *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–43 (1986).  *See also Frank Krasner Enterprises, Ltd. v. Montgomery Cty., MD*, 401 F.3d 230, 234 (4th Cir. 2005) ("The burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction.") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  Indeed, "[t]he standing doctrine is an indispensable expression of the Constitution's limitation on Article III courts' power to adjudicate 'cases and controversies.'" *Frank Krasner Enterprises*, 401 F.3d at 234 (citing *Allen v. Wright*, 468 U.S. 737, 750–51 (1984)).  While the

11

Fourth Circuit has yet to hold that a defendant's failure to establish Article III standing in a removed case requires remand of the civil action to state court, other circuit courts of appeal have so held. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [the defendant] had to establish that all elements of jurisdiction – including Article III standing – existed at the time of removal."); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016); *Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014); *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 F. App'x 455 (5th Cir. 2013); *Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Human Serv.*, 876 F.2d 1051 (1st Cir. 1989).

The "irreducible constitutional minimum of standing" consists of three elements. *Steel Co.*, 523 U.S. at 101. To have a claim heard in federal court, the party asserting federal jurisdiction, here Defendants, must show that Plaintiff (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of Defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547; *Frank Krasner Enterprises*, 401 F.3d at 234 (citing *Lujan*, 504 U.S. at 560–61). The Supreme Court in *Lujan v. Defenders of Wildlife* elaborated on these requirements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations omitted); *see also Eagle on All. v. Jewell*, No. 2:13CV371, 2014 WL 4444247, at *3–4 (E.D. Va. Sept. 8, 2014). The Court focuses its analysis on the redressability of Plaintiff's alleged injury-in-fact.

12

Defendants argue that Plaintiff lacks standing in this action because the Court is unable to redress the injury-in-fact that Plaintiff alleges he suffered as a result of the MDR determination. Defendants observe that Williams' consent to her son's new IEP occurred after the long-term suspension but before she requested expediting the due process hearing to challenge the MDR determination or filed this civil action.  In doing so, Defendants contend that there is no longer a disciplinary "removal" of the child for the purposes of the IDEA and, thus, the Court is unable to afford Plaintiff the relief requested in his Complaint. The Court agrees.  Moreover, because Defendants bear the burden of establishing the existence of federal subject matter jurisdiction – including Article III standing – in this removed case, the unopposed Motion to Dismiss functionally serves as Defendants' admission that they cannot meet their burden.

The Court is not persuaded that a favorable decision for Plaintiff in this matter would redress his alleged injury under the IDEA.  From what the Court may discern on the face of the Complaint, Plaintiff requests that the Court compel the Chesterfield County School Board – a non-party to this suit – to reinstate Plaintiff at his school, proceeding under the IEP in place prior to the MDR determination and his long-term suspension.  Assuming *arguendo* that Plaintiff properly brought this action against the Chesterfield County School Board, which he did not, the Court still lacks the power to redress his alleged injury.

After the MDR panel determined that Plaintiff's misconduct on December 9, 2016 was not a manifestation of his disability, the IEP team could have handled the situation using one of two different procedures.  First, the team could have permitted school officials to apply generally applicable disciplinary procedures to Plaintiff "in the same manner and for the same duration in which the procedures would be applied to children without disabilities . . ." 20 U.S.C. §1415(k)(1)(C); 34 C.F.R. § 300.530(c).  If school officials unilaterally (i.e., without the parent's

consent) removed the disabled child for more than ten days, the child must "continue to receive educational services . . . so as to enable the child to continue to participate in the general education curriculum, although in another setting, and to progress to meeting the goals set out in the child's IEP." 20 U.S.C. § 1415(k)(1)(D)(i); 34 C.F.R. §§ 300.530(d), 300.536(a).

The IEP team could have taken an alternate path and affirmatively changed the disabled child's placement from the school that suspended him to an alternative educational setting. Such action is procedurally checked by the IDEA's "stay-put" provision, and the IEP team cannot proceed without the parent's consent. 20 U.S.C. § 1415(j); *see M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 463 (8th Cir.), *cert. denied*, 555 U.S. 979 (2008) (applying *Honig v. Doe*, 484 U.S. 305, 323–25 (1988)). Any alternative educational setting "shall be determined by the IEP Team." 20 U.S.C. § 1415(k)(2); 34 C.F.R. §§ 300.530(d)(5), 300.531.

Here, Williams consented[7] to a change in Plaintiff's placement to a private day school after Plaintiff's long-term suspension but *prior* to appealing the MDR determination via hearing or filing this action. "Once the IEP team changed [Plaintiff's] placement with [Williams'] consent, the IEP team, not the school board, became the decision-maker authorized to change his placement again." *Doe ex rel. Doe v. Todd Cty. Sch. Dist.*, 625 F.3d 459, 464 (10th Cir. 2010) (citing 34 C.F.R. § 300.530(d)(5)). Any request for a hearing before a Hearing Officer was unavailing because the Chesterfield County School Board had no authority to order Plaintiff's reinstatement at that point in time. *See id.*; *M.M.*, 512 F.3d at 464. Moreover, Plaintiff's IEP now requires that he be placed in a private day school, over which the Court has no jurisdiction

---

[7] The circumstances as described do not demonstrate that the IEP team acted unilaterally in Plaintiff's change of placement. After twice rejecting the IEP team's prior proposals for a change in placement before consenting to the third proposal, it is clear that Williams influenced the IEP team's decision-making process. Moreover, by not responding to the Motion to Dismiss, Plaintiff does nothing to challenge Williams' consent as ill-gotten.

in the instant matter.  Simply put, the Court is now unable to redress Plaintiff's alleged injury under the IDEA.

For these reasons, the Court finds that Plaintiff lacks Article III standing, and Defendants' removal was improper because the Court lacked subject matter jurisdiction over the IDEA claim at the time of removal.  Having determined that it lacks subject matter jurisdiction over this action, the Court is without authority to evaluate the sufficiency of the Complaint under Federal Rule of Civil Procedure 12(b)(6).[8]  *Steel Co.* 523 U.S. at 93–94.

Defendants request in the Motion to Dismiss that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction.  Such a request requires a decision on the merits but the Court has no jurisdiction to make that determination.  In essence, Defendants ask the

---

[8] The Court observes that, if it had subject matter jurisdiction in this matter, the Complaint may suffer additional procedural defects such that it may not survive a Rule 12(b)(6) motion. The Complaint alleges an IDEA violation against improper parties to the suit.  First, Plaintiff improperly pleads "Chesterfield County Schools" as a party to this suit.  Virginia law vests supervision of schools in each school division with the school board. Va. Const. art. VIII § 7; Va. Code Ann. § 22.1-28. The Virginia Code establishes school boards as corporate bodies, conferring all powers, duties, obligations, and responsibilities commensurate with such a legal entity; this includes the power to sue and be sued. Va. Code Ann. § 22.1-71. Accordingly, the Chesterfield County School Board is the only local entity the Virginia state legislature delegated authority to govern the Chesterfield County public school system. Only the Chesterfield County School Board has authority to sue and be sued in connection with that governance. Nowhere in the Virginia Constitution or the Virginia Code can the Court discern that "Chesterfield County Schools" is a corporate body vested with authority to sue and be sued. "Absent this express grant of authority, a civil action cannot lie against" Chesterfield County Schools. *See M.S. v. Fairfax Cty. Sch. Bd.*, No. 1:05CV1476(JCC), 2006 WL 721372, at *3 (E.D. Va. Mar. 20, 2006); *see also Thayer v. Washington Cty. Sch. Bd.*, 949 F. Supp. 445, 446 n.1 (W.D. Va. 1996) ("'Washington County Public Schools' is not a defendant, nor could it be, since it is not a recognizable legal entity."). "Chesterfield County Schools" is not a cognizable legal entity and lacks standing to be sued.

Dr. Lane is an improper party to this suit as well. As an initial matter, the Court agrees that nowhere in the Complaint does Plaintiff levy specific allegations against Dr. Lane. Rather, the style of the case suggests that Plaintiff intended to sue Dr. Lane in his official capacity as "Superintendent of Chesterfield County Public Schools." (Compl.) "[S]uits against officers of an entity generally represent only another way of pleading a suit against the entity of which the officer is an agent." *M.S.*, 2006 WL 721372, at *3 (citing *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999). Dr. Lane, pled as superintendent in the Complaint, is an agent of "Chesterfield County Public Schools." The Court suspects that Plaintiff improperly named "Chesterfield County Schools" as "Chesterfield County Public Schools" but the end result is the same because the Virginia state legislature has not empowered either entity as a corporate body with authority to sue and be sued. The Defendants note in their brief, and the Court agrees, that the claims against Dr. Lane are, at best, duplicative.

As a final note, to the extent that Plaintiff sues Dr. Lane in his individual capacity, these claims fail because the IDEA does not create individual liability. *See Justice ex rel. Son v. Farley*, No. 5:13-CV-343-D, 2014 WL 229127, at *8 (E.D.N.C. Jan. 21, 2014), *aff'd*, 569 Fed. App'x 181 (4th Cir. 2014) (per curiam).

Court to act *ultra vires*, which it declines to do. *Id.* at 102. Nor can the Court dismiss the Complaint without prejudice. The statutory mandate of 28 U.S.C. § 1447(c) is clear that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added). Accordingly, the Court RECOMMENDS that this civil action be REMANDED to Chesterfield County Circuit Court.

## IV. CONCLUSION

Having considered the Complaint and Defendants' brief, and for the reasons discussed herein, the Court finds that it lacks subject matter jurisdiction in this matter, Plaintiff lacks Article III standing, and Defendants' removal was improper. Accordingly, the Court RECOMMENDS that this civil action be REMANDED to Chesterfield County Circuit Court.

The Clerk is directed to file this Report and Recommendation electronically and send a copy to all counsel of record, to *pro se* Plaintiff at his address of record, and to the Honorable M. Hannah Lauck, United States District Judge.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal those findings and conclusions accepted and adopted by the District Judge except upon the grounds of plain error.**

/s/

Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: June 5, 2018